## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| TIFFANY PRATT, individually and on behalf of a class of similarly situated persons as defined herein, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **CASE NO.:** _24-cv-03710_ |
| THE TRAVELERS INDEMNITY COMPANY; THE TRAVELERS COMPANIES, INC.; TRAVELERS TEXAS MGA, INC.; CONSUMERS COUNTY MUTUAL INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Tiffany Pratt ("Plaintiff"), individually and on behalf of a class of similarly situated persons as defined herein, and hereby files this Class Action Complaint against Defendants The Travelers Indemnity Company, The Travelers Companies, Inc., Travelers Texas MGA, Inc. and Consumers County Mutual Insurance Company ("Defendants" or "Travelers") and, based upon investigation, due diligence, and information and belief, alleges as follows:

### I.    INTRODUCTION

1.    This case is simple and straightforward. Per Travelers' standard form automobile insurance policy, an insured's automobile policy will terminate at the end of the policy period if the insured does not accept Travelers' renewal offer. Per Travelers'

standard form policy, the insured's failure to pay the renewal or continuation premium constitutes sufficient non-acceptance of Travelers' renewal offer.

2.     However, as described more herein, Travelers engages in a systematic business practice of disregarding its own contractual language by unilaterally renewing discontinued policies, and thereafter aggressively pursuing and collecting fees and/or premium from consumers that are not properly owed. More specifically, Travelers has a pattern and practice of automatically assessing and attempting to collect, at a minimum, a standard $50.00 fee that it characterizes as "a minimum premium charge for renewing" *when no such renewal took place*. In some instances, Travelers has assessed and attempted to collect (or did collect) additional premium amounts that are not owed by the consumer and to which Travelers is not entitled. As described more herein, Travelers engages in a deceptive scheme perpetrated by improper billing tactics that are designed to illegally increase Travelers' collections at the expense of an unknowing and often helpless segment of consumers.

3.     To illustrate, in July 2021 Plaintiff Tiffany Pratt purchased an automobile policy with a policy period of July 28, 2021 to July 28, 2022 at 12:01 am. Plaintiff made all premium and fee payments required of her under the policy. In late June 2022, Travelers sent Plaintiff an offer to renew the policy for the period July 28, 2022 to July 28, 2023 at 12:01 am. In accordance with her contract, Plaintiff elected not to accept Travelers' renewal offer. Plaintiff did not make payment on a renewal policy; in fact, Plaintiff had any automatic payment deductions or authorization discontinued since she was electing not to renew with Travelers. Further, Plaintiff did not complete or return

any forms provided to her by Travelers that Travelers requires for renewal. In accordance with the plain terms of the policy, Plaintiff properly exercised her contractual right not to renew, and the policy, coverage, and relationship between Plaintiff and Travelers should have terminated.

4.      However, in violation of its standard form policy, Travelers unilaterally and without authorization renewed Plaintiff's policy. Plaintiff was unaware of Travelers' unilateral renewal until late 2022 when Plaintiff began receiving aggressive collection letters, bills, and notices from Travelers regarding amounts allegedly owed on a renewal policy. Plaintiff was unaware that Travelers had unilaterally renewed her policy. In fact, Plaintiff had obtained and was utilizing automobile coverage from a different carrier after her policy with Travelers terminated at the expiration of its policy period.

5.      Travelers aggressively pursued additional fees and amounts allegedly due from Plaintiff pertaining to the unauthorized renewal policy through multiple bills, letters, calls, and collection attempts. Travelers insisted that Plaintiff owed, at the very minimum, $58.00 comprised of a $50.00 fee for what Travelers characterized as "a minimum premium charge for renewing" plus $8.00 "due to Texas Auto-Motor Vehicle Crime Prevention Authority Fee." Because of Travelers' repeated collection efforts and its threats to report the alleged indebtedness, Plaintiff reluctantly paid the $58.00 without full knowledge of all facts.

6.      This was not a random or isolated occurrence with Plaintiff. Rather, it was part of a wide-spread business practice and scheme by Travelers to collect unauthorized and improper amounts from insureds who non-renew and/or who otherwise cancel their

auto coverage with Travelers. As discussed more herein, thousands of consumers across the United States have complained and voiced concerns to the Better Business Bureau, state departments of insurance, online consumer forums, and to Travelers about improper billing and collection attempts by Travelers after an insured had non-renewed and/or otherwise canceled coverage, including Travelers' aggressive collection of the flat $50.00 fee described herein after policy termination. This widespread business practice is implemented by Travelers through automated and systematic protocols and is driven by monetary gain.

7. Because these practices are widespread and systematic, Plaintiff brings her claims not only on her own behalf, but also on behalf of a class of similarly situated persons throughout the United States and on behalf of a subclass of Texas citizens. Because the contractual provision at issue is standard form and the business practice at issue is systematic, the claims in this case are ideally suited for class action treatment. In this action, Plaintiff asserts claims against Defendants for breach of contract, unjust enrichment, violation of the Minnesota Consumer Fraud Act, violations of the Texas Unfair and Deceptive Trade Practices Act, and for declaratory and injunctive relief.

## II.    PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Tiffany Pratt is an adult resident citizen of the state of Texas and was an insured under the policy at issue underwritten by Defendant Consumers County Mutual Insurance Company and serviced in all respects by the Travelers entities named as Defendants herein.

7.      Defendant The Travelers Indemnity Company is an insurance corporation domiciled in the state of Minnesota and authorized to transact insurance business in the state of Texas and throughout the United States. Upon information and belief, Defendant The Travelers Indemnity Company handled all servicing, renewal, and billing matters pertaining to Plaintiff's policy.

8.      Defendant The Travelers Companies, Inc. is an insurance corproation domiciled in the state of Minnesota and authorized to transact business in the state of Texas and throughout the United States. Upon information and belief, The Travelers Companies, Inc. is the parent company of the Travelers entities named as Defendants herein and was involved in the servicing, renewal, and billing pertaining to Plaintiff's policy.

9.      Defendant Travelers Texas MGA, Inc. is, upon information and belief, a Texas corporation with its principal place of business in Texas. Travelers Texas MGA, Inc. is a wholly-owned subsidiary of Travelers and does business in the state of Texas. Upon information and belief, Travelers Texas MGA, Inc. was involved in the servicing, billing, and renewal of Plaintiff's policy at issue in this case.

10.     Defendant Consumers County Mutual Insurance Company is, upon information and belief, a Texas corporation with its principal place of business in Texas. Upon information and belief, Defendant Consumers County Mutual Insurance Company was the underwriter of Plaintiff's automobile policy at issue in this case.  Upon information and belief, Consumers County Mutual Insurance Company is a subsidiary and affiliate of the Travelers entities named as Defendants herein.

11.     All of the corporate Defendants named in this matter are affiliated entities of Travelers. Defendants acted in conjunction with one another in carrying out the improper business practices described herein. Defendants will be referred to collectively at times throughout this Complaint as "Travelers."

12.     The Travelers entities named as Defendants herein maintain their principal place of business in Minnesota.

13.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), 1441(a) - (b), and 1453. There are more than 100 members of the proposed class and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

14.     Venue is proper in this Court under 28 U.S.C. § 1391, as the conduct giving rise to Plaintiff's claims occurred in this District. Defendants transact business and reside in this District.

### III.   FACTUAL BACKGROUND

#### A.   *Travelers' Improper Practices and Plaintiff's Experience*

15.     Travelers and its affiliated entities underwrite, market, sell, service, and provide automobile insurance to consumers throughout the United States. Each and every automobile insurance policy sold and serviced by Travelers in the United States contains the same following standard form provision:

> C.   Automatic Termination
>
> 1. If we offer to renew or continue your policy for another policy period and you or your representative do not accept, this policy will automatically terminate at the end of

the current policy period. Failure to pay the required renewal or continuation premium when due means that you have not accepted our offer.

2. If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

A copy of Plaintiff's policy containing this standard form provision is attached hereto as Exhibit A.

16. Likewise, each and every automobile policy sold and serviced by Travelers in the United States identifies a "policy period" establishing the policy's duration. For example, as shown on the initial Declarations Page applicable to Plaintiff when she purchased the policy, "[t]he policy period is from July 28, 2021 to July 28, 2022 12:01 A.M. STANDARD TIME at your address shown in Item 1." (See Exhibit B attached hereto.) Due to an amendment/endorsement to Plaintiff's policy occurring during Plaintiff's policy period, an Amended Declarations Page was issued by Travelers stating "[t]he policy period is from July 28, 2021 to July 28, 2022. Coverage has been changed. These Declarations replace all prior Automobile Policy Declarations on the date on which this change is effective." (See Exhibit C attached hereto).

17. Per the standard form policy provision quoted in paragraph 15, which is contained every Travelers automobile insurance policy, an insured's policy will terminate at the end of its policy period if the insured does not accept Travelers' renewal offer. Per Travelers' standard form policy, the insured's failure to pay the renewal or continuation premium constitutes sufficient non-acceptance of Travelers' renewal offer.

18.     In July 2021, Plaintiff purchased an automobile policy from Travelers with a policy period of July 28, 2021 to July 28, 2022 at 12:01 AM, policy number 609888084 222 1. Plaintiff made all premium and fee payments required of her under the policy.

19.     In late June 2022, Travelers sent Plaintiff an offer to renew the policy for the period July 28, 2022 to July 28, 2023 at 12:01 AM. In accordance with the terms of her contract, Plaintiff elected not to accept Travelers' renewal offer. Plaintiff did not make payment of any kind on a renewal policy from Travelers and, in fact, Plaintiff had any automatic payment deductions or authorizations discontinued since Plaintiff was electing not to renew with Travelers.

20.     Plaintiff did not complete or return any forms provided to her by Travelers that Travelers requires for renewal.

21.     In accordance with the terms of her policy, Plaintiff properly exercised her contractual right not to renew, and the policy, coverage, and relationship between Plaintiff and Travelers should have terminated. Because she had elected not to review with Travelers, Plaintiff obtained automobile coverage from a different carrier after her policy with Travelers terminated at the expiration of its policy period.

22.     However, in violation of its standard form policy, Travelers unilaterally and without authorization renewed Plaintiff's policy. Travelers engages in a systematic business practice of unilaterally renewing discontinued policies and then aggressively pursuing and collecting fees and/or premium from consumers that are not properly owed. Specifically, Travelers has a pattern and practice of automatically assessing and

attempting to collect, at a minimum, a standard $50.00 fee that Travelers characterizes as "a minimum premium charge for renewing" *when no such renewal took place*.

23.    Plaintiff was unaware of Travelers' unilateral renewal until late 2022 when Plaintiff began receiving aggressive collection letters, bills, and notices from Travelers regarding amounts allegedly owed on a renewal policy. The collection letters from Travelers stated that Plaintiff's alleged indebtedness would be sent to a collection agency and reported if not timely paid by Plaintiff.

24.    In late 2022, Travelers persistently and aggressively pursued additional fees and amounts allegedly owed by Plaintiff on the unauthorized renewal policy through multiple bills, letters, calls, and collection attempts. Travelers insisted that Plaintiff owed, at a minimum, $58.00 comprised of a $50.00 fee for what Travelers characterized as "a minimum premium charge for renewing" plus $8.00 "due to Texas Auto-Motor Vehicle Crime Prevention Authority Fee." (See correspondence from Travelers attached hereto as Exhibit D).

25.    Because of Travelers' continued insistence on monies being due from Plaintiff, its repeated collection efforts, its threats to report the alleged indebtedness, and its deceptive communications, Plaintiff reluctantly paid the $58.00 as a result of Travelers' deceptive conduct and without full knowledge of all facts.

**B.    *Travelers' improper billing practices are part of a widespread and systematic scheme.***

26.    Travelers engages in a widespread and deceptive scheme of improper billing tactics and practices designed to illegally increase Travelers' collections at the

expense of an unknowing and often helpless segment of consumers. Plaintiff's experience with Travelers as described herein was not an isolated or random occurrence. Rather, it was part of a widespread business practice and scheme by Travelers to collect unauthorized and improper amounts from insureds who non-renew and/or who otherwise cancel their auto coverage with Travelers. Travelers' widespread business practice is implemented through automated and systematic protocols and is driven by monetary gain.

27.     Thousands of consumers across the United States have complained and voiced concerns to the Better Business Bureau, state departments of insurance, online consumer forums, and to Travelers itself about improper billing and collection attempts by Travelers after an insured had non-renewed and/or otherwise canceled coverage, including Travelers' aggressive collection of the $50.00 fee described herein after policy termination. Some examples of these consumer complaints found online are reproduced below:



**Theresa R.**
SC, SC
0    1

  4/18/2023

Be Aware even if you give ample notice of cancellation, Travelers insurance will charge you $50.00 for that one day when you switch over to a new policy. No one will tell you this. You will receive a letter in the mail. So make sure that your new insurance company backdates your policy by one day or else you have to go through the hassle of getting an Id card / certificate of insurance binder to contest this $50 no default charge. My car insurance was $65 a month and they are charging me $50 for greed. I will never recommend this company. I do not appreciate this deliberate mishandling of lack of communication.



**Mishelle**
Atlanta, GA



Reviewed Jan. 28, 2019

I left Travelers back in November because they raised my premium again with no notification and found out only after the money had come out of my account. The day my new policy would have started I called to switch and they said as long as I did it that day I shouldn't have a charge. I went ahead and switched to Geico and later was billed for a bogus $50 charge I was never communicated of when I asked about leaving them. It seemed so unfair and dirty to charge something like that for leaving them so after trying to fight the fee and getting turned down I didn't pay it.

Now it's a couple months later and they sent me to collections so I bit my tongue and paid. During the couple years I was with them I always received terrible customer care and they never sent communications out to me. Every time my insurance went up I never got a new quote and once I sent them my driving record to prove it was clean and they still raised my premium. If you like surprises and to be screwed over then this company is for you.

Less

⇧ Thanks Mishelle (21)   Report

 **Initial Complaint**
05/26/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I've had Travelers insurance for my vehicle for years. In Sep. of 2021 my car broke down &
was eventually repossessed by the company that owns it. My policy went from 4/21 to 10/21.
My new policy would have covered 10/21 to 4/22 but I never renewed my policy. I never sent
Travelers a dime towards the premiums. They have sent this bill to a collection agency. I've
called them several times to have this removed from the collection agency but they say they
can't unless I send them proof I canceled the policy. I have no way of providing proof of this.
In hind sight I should have called them to cancel & I assumed that if I didn't pay any
premiums it would be obvious that I was no longer a customer. I would appreciate them
notifying the collection agency that I owe nothing!

 **Business response**
06/09/2022

*Please be advised that a member of Travelers' Policyholder Services
responded directly to Ms. ******* as of June 8, 2022.  She reviewed the billing
activity and confirmed that there was an outstanding balance sent to
collections.  The Manager also confirmed that she was unable to locate a
prior cancellation request for Ms. ********* automobile policy. With her
response, the Manager included a cancellation form to be completed.  She
confirmed that upon receipt of the completed form with the effective date,
Ms. ********* signature and date, Travelers would promptly handle her request.
She noted that since the request is more than 90 days in the past, Travelers
would require supporting documentation (i.e. such as documentation
supporting that she no longer owned the vehicle).
Sincerely,*

*Linda N.
Travelers Companies Incorporated
Consumer Affairs
Telephone Number:  *************

 **Customer response**
06/11/2022

Complaint: ********

I am rejecting this response because:I've told the company, repeatedly, that
there is no way I can prove that my car was inoperable. It sat in my driveway
until the repo company came & picked it up(picture). They sent me a
cancellation request but I have no printer. I want this removed from the
collection agency. It's a fact that if I was driving around back then & got into
an accident I guarantee that they would have denied the claim due to non-
payment. So now they basically want to force me to pay for something I didn't
need nor did I use!!
I OWE THIS COMPANY ZERO DOLLARS!!
Sincerely,

**** *******




**Daniel M**

⭐☆☆☆☆                                                                                03/07/2024

Horrible insurance company!! High rates , terrible customer service . They do not care about
their customers at ALL! They renewed my policy without my consent and withdrew 349.50 out
of my bank account.. I immediately asked for a refund and it's been over a week and they still
haven't returned my money. Everytime I call to find out where my refund is they rudely tell me to
call my agent and even hanged up the phone on me. Terrible company I will not EVER use them
again!!!




**Steven P**

⭐☆☆☆☆                                                                                01/30/2024

Travelers insurance company turned me over to collections for not paying a renewal amount for
a policy that was canceled. I canceled the policy 2nd of October and was told I owe nothing and
to disregard any further notices. I received a couple notices. I was told to ignore because I was
paid in before I canceled and the amount of notice was for my renewal which I wasn't doing (
they had raised my rate almost $600. Just another company out to cheat the people.




**Victoria M**

⭐☆☆☆☆                                                                                08/17/2023

Travelers practically doubled our homeowner insurance in 2023 so, in February 2023 we
moved our homeowner, auto, and umbrella policies to another agency. Because our auto policy
with Travelers expired March 23, 2023, our new auto policy began March 23, 2023. Like the
umbrella and home policies, we paid the auto policy and did not renew with Travelers. Despite
this, they have harassed us with letters demanding payment of $344 for an expired policy and,
without our permission or knowledge and despite at least one email explicitly stating the correct
policy expiration date, extended the policy expiration date of the former auto insurance from
March 23, 2023 to April 23, 2023. Initially, I thought that was a typo (4 vs 3) but then they sent a
letter with the words "March" and "April". I have multiple email communications from March to
August requesting that they cancel the auto policy. We even secured the assistance of our
former agent to prevent further harassment. Despite us not having coverage with them (we
never renewed the auto policy in 2023), we had to submit a signed cancellation notice and
documentation of our new policy. FINALLY, we received confirmation of cancellation. THEN they
said we needed to send a policy for the third car that was on the policy. I informed them that we
no longer were responsible for that car. NEVERTHELESS today, August 17, 2023, we received a
letter from a debt collector for the amount of $344 due "as of 4/23/2023". Talk about a WTF
moment! We are beyond perplexed and infuriated. We have NEVER encountered such practices
and are just floored that they are so blatant in their fraudulent practices as to send letters and
emails which are verifiable documentation of harassment and crooked/dishonest business
practices. We will not do business with Travelers and suggest the same for anyone else who
needs insurance. UNCONSCIONABLE!!!!



## Sherry A


06/15/2023

We were with TRAVELERS for our home and auto for two years. Fortunately, we had no claims in that time period--I fear that would have been a horrible experience. I always shop each year to determine if pricing is in line. I found better insurance with a substantial savings and proceeded to cancel both policies, 5 days prior to my renewal date. Today I am waking up to a nightmare! TRAVELERS has pulled nearly $6000 from my bank account for policies I cancelled. They are telling me the money won't be back for 5 days! I have bills to pay. I asked them to do a wire transfer--they say that will take just as long! This is robbery on so many levels. If they do this with all their customers who cancel, they will have quite a pot of money to earn substantial interest on for that 5 days--all a part of their scam. Next stop for me, is complaint to the Consumer Financial Bureau and the Texas Department of Insurance.



## Meagan C

05/25/2023

Zero stars After cancelling a policy Travelers Insurance still took payment 20 days later and no one can figure out why or respond to the refund request. DO NOT get insurance through this company.



**Initial Complaint**
05/02/2023

**Complaint Type:** Product Issues
**Status:** Answered

I have an auto insurance policy with Travelers which expires on April 14, 2023. I found a new auto insurance through another provider, so I canceled Traveler's policy at the expiration data, as they have an auto-renewal. After the policy was cancelled, Travelers still charged me a balance, on a non-existing policy that has ended. They also refused to make any adjustments and their response is contracdictory. At first they said there is a late fee. After that they said it was due to some *** **** State policy. Charging customer on a non-existing policy is not an acceptable practice.

**Business response**
05/04/2023

Hello, Travelers provided a detailed response directly to the consumer on May 2, 2023. Thank you.

14

**Initial Complaint**
05/31/2024

**Complaint Type:** Billing Issues    **Status:** Answered ⓘ



I cancelled my Travelers Insurance, Automobile insurance Policy ************ in December of 2023. See attached cancellation notice. And even got a refund for what Travelers owed me for an overpaid balance in my insurance policy, see attached. Then recently I received a notice from a collection company, ****** ****** ********, that they are trying to collect for a balance that I owe Travelers Insurance for the same policy. I am requesting that BBB reach out to Travelers insurance and help me get this rectified as I am afraid that due to this mistake from Travelers insurance, that it will negatively effect my credit score.



**Business response**
06/05/2024

Hello,
Travelers provided a detailed response directly to the consumer on 6/4/24.
Thank you

---



Ann S

                                                                06/10/2024

Don't use Travelers, a complete rip off. I canceled my policy in plenty of time and they charged me over $100 for a so-called policy change. Don't use them

---



Jorge S

                                                                06/05/2024

They are a pain when you need to cancel the policy After cancelling a weekprior to the new month they withdraw the monthly payment anyways and so after putting a dispute with my back got my money back, but now i got a letter from collection that i own them $53.xx lol I wont pay you any cent and i will put bad reviews on all the websides until i get this fix ***** *******



## IV.    CLASS ACTION ALLEGATIONS

28.    Plaintiff seeks certification of the following nationwide class ("Nationwide Class"):

> All citizens residing in the United States and its territories who, within six (6) years of the filing of this action, were (1) insured under an auto policy sold, issued, or serviced by Defendants containing the same or similar "Automatic Termination" provision discussed herein and who (2) received a bill for premiums and/or fees from Defendants without a valid claim of right for the money.

29.    Plaintiff also seeks certification of the following Texas subclass ("Texas Subclass"):

> All citizens residing in Texas who, within six (6) years of the filing of this action, were (1) insured under an auto policy sold, issued, or serviced by Defendants containing the same or similar "Automatic Termination" provision discussed herein and who (2) received a bill for premiums and/or fees from Defendants without a valid claim of right for the money.

30.     Excluded from the proposed classes are Defendants, any of Defendants' affiliated corporations or agents, any entity in which Defendants have a controlling

interest, and any agents, employees, officers, and/or directors of Defendants or any other such entities and their representatives, heirs, successors, and/or assigns.

31.    **Numerosity and Ascertainability.** The classes are so numerous that it would be impracticable to join all affected class members in a single action. There are, at a minimum, hundreds of members of each proposed class. The identity of class members is ascertainable, as the names and addresses of all class members can be identified in Defendants' or its agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

32.    **Existence and Predominance of Common Questions of Law and Fact.** There are common questions of law and fact common and of general interest to each class. These common questions of law and fact predominate over any questions affecting only individual members of each class. Said common questions include, but are not limited to, the following:

a.   Whether Defendants engaged in a widespread and systematic practice of violating contracts with consumers throughout the United States by virtue of the conduct described herein;

b.   Whether Defendants sought and collected unauthorized amounts which, in equity and good conscious, are due to be returned to Plaintiff and members of the class;

17

c.  Whether Defendants conduct violates the consumer protection statutes referenced in this Complaint;

d.  Whether Plaintiff and the class members suffered damages as a result of Defendants' actions; and

e.  Whether Plaintiff and class members are entitled to declaratory and injunctive relief as requested herein.

33.    **Typicality.** The claims of the named Plaintiff are typical of the claims of the classes that she represents and arise out of the same standard form improper conduct perpetrated on members of the respective class.

34.    **Adequate Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the classes that she represents and has no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions and is financially able to represent the classes.

35.    **Superiority.** The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of each class is impracticable. The common questions of law and fact regarding Defendants' conduct and the application of form documents devised by Defendants predominate over any questions affecting only individual class members. The interest of judicial economy strongly favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages is too small to make it practicable to bring individual lawsuits. The conduct of this action as a class action

presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives.

36.    Class action treatment is proper and this action should be maintained as a class action pursuant to Fed. R. Civ. P. 23 because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

**COUNT I**
**BREACH OF CONTRACT**

**(On Behalf of the Proposed Nationwide Class)**

38.    Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

39.    The automobile insurance policy issued by Defendants provides under the "Automatic Termination" provision that "[i]f we offer to renew or continue your policy

for another policy period and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due means that you have not accepted our offer." (Exhibit A hereto, p. 5). This standard form provision is found in each and every automobile insurance policy issued by Defendants in the United States.

40.    Plaintiff and class members exercised their contractual right not to renew in accordance with the terms of the policy.

41.    Defendants have breached contracts with Plaintiff and class members by improperly charging for coverage after the expiration of the policy period or otherwise improperly charging and collecting premiums and fees that are not rightfully owed by consumers.

42.    Plaintiff and class members are entitled to any and all available compensatory damages as a result of Defendants' breach of contract.

## COUNT II
## UNJUST ENRICHMENT

### (On Behalf of the Proposed Nationwide Class)

43.    Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

44.    Plaintiff pleads this claim in the alternative to her breach of contract claim. Plaintiff will elect to proceed under either the breach of contract claim or unjust enrichment claim at the appropriate juncture in the litigation.

45.     Defendants have collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Defendants to collect such premiums and fees in the manner as described herein.

46.     Such conduct sounds in equity under the common law of unjust enrichment, money had and received, and constructive trust. Defendants have been unjustly enriched by virtue of their improper and deceptive conduct.

47.     Plaintiff and class members have suffered loss by virtue of Defendants' conduct and are entitled to relief for unjust enrichment.

### COUNT III
### VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### (On Behalf of the Proposed Nationwide Class)

48.     Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

49.     Defendants, Plaintiff, and the class members are "persons" within the meaning of Minn. Stat. § 325F.68.

50.     The Minnesota Prevention of Consumer Fraud Act ("MCFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1.

51.     As alleged herein, Travelers, through its agents, employees, and/or subsidiaries, violated the MCFA by knowingly and intentionally concealing and failing to

disclose material facts regarding unauthorized and unilateral renewal practices and assessment and collection of improper fees and/or premium from insureds who non-renew and/or who cancelled coverage, as detailed above.

52.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding these practices as described herein, Travelers engaged in one or more unfair or deceptive business practices prohibited by the MCFA.

53.    Defendants' misrepresentations and omissions regarding renewal and its billing tactics were made to Plaintiff and the class members in a uniform manner.

54.    Travelers' unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the class members, about amounts due and owing to Travelers.

55.    The facts regarding Defendants' business practices that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the class members, who consider such facts to be important in their dealings and transactions with Travelers.

56.    Plaintiff and class members had no way of discerning that Travelers' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and class members did not, and could not, unravel Defendants' deception on their own.

57.     Travelers had an ongoing duty to Plaintiff and class members to refrain from engaging in unfair or deceptive practices under the MCFA in the course of its business. Specifically, Defendants owed Plaintiff and class members a duty to disclose all the material facts concerning its unauthorized renewal and improper billing practices, because Defendants possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

58.     Plaintiff and the class members were aggrieved by Defendants' violations of the MCFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding unauthorized renewal and improper billing practices.

59.     Plaintiff and the class members paid money to Travelers in reliance on Defendants' misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its unauthorized renewal and improper billing practices.

60.     Had Travelers not engaged in the deceptive acts and practices alleged herein, Plaintiff and class members would not have paid money to Travelers for premium and/or fees that were not rightfully due from them.

61.     Defendants' violations of the MCFA present a continuing risk of future harm to Plaintiff and the class members.

62.     Plaintiff and the class members seek an order enjoining Defendants' unfair and deceptive acts or practices in violation of the MCFA and awarding actual damages,

costs, attorneys' fees, and any other just and proper relief available under the MCFA, Minn. Stat. § 325F.70, and Minn. Stat. § 8.31, subd. 3a.  This action benefits the public. *See* Minn. Stat. § 325F.70, subd. 3.

<u>**COUNT IV**</u>
<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>

<u>**(On Behalf of the Proposed Nationwide Class)**</u>

63.    Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

64.    A dispute between a Plaintiff and the putative classes and Travelers is before this Court under Minnesota law concerning the application of the auto insurance policies issued by Travelers, conformance of those policies with Minnesota law, and whether Travelers' business practices challenged herein violate the policy and applicable law.

65.    Travelers' unlawful scheme and uniform business practice as described herein are ongoing. Travelers has violated, and continues to violate, Minnesota law and the standard form insurance policy engaging in unauthorized renewals and improper billing tactics as described herein.

66.    Plaintiff, therefore, seeks a declaration of the rights and liabilities of the parties herein.  Specifically, Plaintiff seeks: (1) a declaration on behalf of herself and the class she seeks to represent that Travelers' conduct as described herein violates the standard form policy and applicable Minnesota law, and (2) appropriate injunctive, equitable and monetary relief based on and flowing from the declaration.

## COUNT V
## VIOLATIONS OF THE TEXAS INSURANCE CODE

### (On Behalf of the Proposed Texas Subclass)

67.    Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

68.    Defendants' conduct described herein violates sections (1), (2), (3), and (5) of § 541.061 of the Texas Insurance Code, which provides

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

69.    Defendants' conduct also violates § 541.051 of the Texas Insurance Code, which states in relevant part:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy

70.    Defendants alone, and not Plaintiff and class members, possess the information regarding its unauthorized renewal and improper billing practices, such that the Plaintiff and class members were unaware of Defendants' acts or practices.

71.    Plaintiff and the class sustained actual damages caused by Defendants' actions or practices, including unfair or deceptive actions or practices in the business of insurance.

72.    Defendants' conduct is ongoing and continues unabated.

73.    Moreover, as alleged herein, Defendants' unlawful and deceptive trade practices also violate the Texas Insurance Code.

74.    Plaintiff and the class members are entitled to recover from Defendants their actual damages, treble damages, costs, and attorneys' fees.

## COUNT VI
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTION ACT

### (On Behalf of the Proposed Texas Subclass)

75.    Plaintiff adopts and incorporates all previous allegations as if they were set forth herein.

76.    By their purchase of the policies from Defendants, Plaintiff and class members are consumers as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

77.    Defendants' violations of the Texas Insurance Code, alleged above, also violate the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(4).

78.    In addition, Defendants separately violated the DTPA by representing the policies "had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.' *Id.*, § 17.45(b)(5).

79.    Defendants' violations of the DTPA caused Plaintiff and the class economic damages.

80.    Defendants' conduct is ongoing and continues unabated.

81.    Plaintiff and class members are entitled to recover from Defendants their actual damages, treble damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the classes as follows:

A.    An order certifying this action as a class action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.    An order declaring that Travelers' conduct is unlawful and enjoining Travelers from engaging in any further unlawful conduct;

C.    An award of damages (including actual, compensatory, statutory, and punitive, as provided by law), to Plaintiff and the class in an amount to be determined at trial, plus interest, in accordance with law;

D.    Restitution or disgorgement of Defendants' ill-gotten gains;

E.    Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendants' described herein;

F.      An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees and reimbursement of litigation expenses pursuant to Minn. Stat. § 8.31, subd. 3a or otherwise provided by law; and

G.      An award such further and additional relief as is necessary to redress the harm caused by Defendants' unlawful conduct and as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Date: September 20, 2024

Respectfully submitted:

*/s/ Kate M. Baxter-Kauf*
Karen Hanson Riebel (MN # 0219770)
Kate M. Baxter-Kauf (MN # 392037)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

R. Brent Irby *
**LYONS IRBY, LLC**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 930-3131
brent@lyonsirby.com

Trey J. Malbrough *
**THE MALBROUGH FIRM LLC**
2107 Fifth Avenue North, Suite 301
Birmingham, Alabama 35203
Telephone: (205) 701-0707
Email:  trey@tmbfirm.com

*\* To be admitted pro hac vice.*

**<u>DEFENDANTS TO BE SERVED</u>**

CONSUMER COUNTY MUTUAL INSURANCE COMPANY
10000 N. CENTRAL EXPRESSWAY, SUITE 750
DALLAS, TX 75231

ALL TRAVELERS ENTITIES
385 WASHINGTON STREET
ST. PAUL, MN 55102